Rachel E. Kaufman
KAUFMAN P.A.
237 S Dixie Hwy, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881
Email: rachel@kaufmanpa.com

*Attorney for Plaintiff and the putative Class*

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| NATHAN ROWAN, individually and on behalf of all others similarly situated, | Case No. |
| *Plaintiff,* | **CLASS ACTION COMPLAINT** |
| *v.* | **DEMAND FOR JURY TRIAL** |
| ENCENSE ENTERPRISES LLC, d/b/a Flex Home & Auto, a Wyoming company, PELICAN INVESTMENT HOLDINGS, LLC, d/b/a Auto Service Department, a Delaware company, NATIONAL ADMINISTRATIVE SERVICE CO., LLC, an Ohio company, AND PALMER ADMINISTRATIVE SERVICES, INC., a Delaware corporation, | |
| *Defendants.* | |

## <u>CLASS ACTION COMPLAINT</u>

Plaintiff Nathan Rowan ("Plaintiff Rowan" or "Rowan") brings this Class Action Complaint and Demand for Jury Trial against Defendant Encense Enterprises

LLC d/b/a Flex Home & Auto ("Defendant Flex Home & Auto" or "Flex Home & Auto"), Pelican Investment Holdings, LLC d/b/a Auto Service Department ("Defendant Pelican" or "Pelican"), National Administrative Service Co., LLC ("Defendant National Administrative" or "National Administrative"), and Defendant Palmer Administrative Services, Inc. ("Defendant Palmer Administrative" or "Palmer Administrative") to stop the Defendants from violating the Telephone Consumer Protection Act ("TCPA") by placing unsolicited calls to phone numbers that are registered on the National Do Not Call registry ("DNC"). Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendants' conduct. Plaintiff Rowan, for this Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## PARTIES

1.    Plaintiff Rowan is a resident of Baltimore, Maryland.

2.    Defendant Flex Home & Auto is a Wyoming registered company that is headquartered in Santa Ana, California.

3.    Defendant Pelican is a Delaware registered company that is headquartered in Santa Ana, California.

4.      Defendant National Administrative is an Ohio registered company that is headquartered in Dublin, Ohio.

5.      Defendant Palmer Administrative is a Delaware registered corporation that is headquartered in Ocean, New Jersey.

## JURISDICTION AND VENUE

6.      This Court has Federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").

7.      This Court has personal jurisdiction over all Defendants. Defendants Flex Home & Auto and Pelican are headquartered in this District. Defendants National Administrative and Palmer Administrative are subject to personal jurisdiction in this District because they purposefully directed their activities toward California residents, transact business in this District through their agents and marketing partners Flex Home & Auto and Pelican, derive revenue from sales generated by telemarketing calls placed from this District, and the claims in this action arise directly from those California-directed activities. Palmer Administrative further conducts business in this District through its CRM system infrastructure that supports telemarketing operations headquartered in Santa Ana, California, and through its alter ego Flex Home & Auto.

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District, including the telemarketing calls at issue.

## INTRODUCTION

9.      As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

10.     When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

11.     By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

12.     The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

13.     According to online robocall tracking service "YouMail," 4.1 billion robocalls were placed in May 2025 alone, at a rate of 135.1 million per day. www.robocallindex.com (last visited October 27, 2025).

14.     The FCC also has received an increasing number of complaints about unwanted calls. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

15.     "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

16.     "The FTC receives more complaints about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf

CLASS ACTION COMPLAINT
-5-

## COMMON ALLEGATIONS

**1.  THE DEFENDANTS AND THEIR ROLES**

**FLEX HOME & AUTO:**

17.    Encense Enterprises LLC operates using the d/b/a Flex Home & Auto.[3]

18.    Flex Home & Auto sells auto service plans to consumers.[4]

19.    Flex Home & Auto placed cold calls to consumers to generate business on behalf of the other Defendants listed in this Complaint.

**PELICAN:**

20.    Pelican Investment Holdings, LLC operates using the d/b/a Auto Service Department, as per the service agreements that Plaintiff received:

### Executive Service Agreement

| Seller |
| --- |
| Pelican Investment Holdings, LLC d/b/a Auto Service Department |
| PO Box 15727 Santa Ana, CA 92735 |

21.    As per the above, Pelican is listed as the seller of the plans that Plaintiff Rowan purchased.

22.    The Auto Service Department website states that it sells auto protection plans to consumers.[5]

---

[3] https://www.bbb.org/us/ca/lake-elsinore/profile/warranty-plans/flex-home-auto-1126-850113202
[4] https://www.flexhomeandauto.com/
[5] https://www.asdservicedept.com/

23.     Consumers have posted complaints online about unsolicited calls that

they received either from or on behalf of Pelican, including:

- "As the other review points out, these guys are dishonest illegal telemarketers who are currently even being sued by the ************* for their crimes."[6]
- "This company uses 3rd party companies to circumvent the National Do Not Call lists. Beware if you receive a call from them or one of their 3rd parties."[7]

**NATIONAL ADMINISTRATIVE:**

24.     National Administrative is a vehicle auto protection plan administrator.

25.     National Administrative also owns/operates Dimension Service

Corporation and Heritage Administration Services.[8]

26.     National Administrative contracts with marketing companies like

Pelican and Flex Home & Auto to sell its auto protection plans, as per Plaintiff's

experience.

27.     Consumers have posted complaints about unsolicited telemarketing

that they received directly to National Administrative through the Better Business

Bureau ("BBB"):

- "They texted me (Flex Auto) -I have never heard of them--about my warranty expiration and try to hustle his way to signing up today for

---

[6] https://www.bbb.org/us/fl/west-palm-beach/profile/auto-warranty-plans/pelican-investment-holdings-llc-0633-92027224/customer-reviews
[7] Id.
[8] https://www.bbb.org/us/oh/dublin/profile/auto-warranty-processing/national-administrative-service-co-llc-0302-11005532

$99 fully refundable. I'm glad I took the time to look this company up!
If it feels wrong, it is! do not do business with them he got mad because
I didn't want to share my credit card information with him, hung up on
me."[9]

- "****** of the company call. Scammers. They called to extend
vehicles parts coverage. And can be lead to pushy and threaten
conversation. And will call you again and again. I just told them, send
me a policy to my gmail (not my personal mail btw) and hang up.
However, don't ever give out your personnel info."[10]

- "A person called me on the phone to tell me about this plan. She said I
needed to change over to them because the plan that i have now is being
sued for a million dollars. My husband and I got to talking about it and
said that's no big deal. I received this booklet in the mail about the
coverage. I decided I would stay where I was at. I call this company to
find out that I have to pay a $75 cancelation fee but was not about this
fee at the time of signing up. I explained to the lady that I was senior
citizen and on a fixed income and didn't have the money. She said that
was company policy and she would send me a code to my email and I
could call back with the code and pay the $75 and she would cancel it.
I feel like I've been scammed! Help please!"[11]

**PALMER ADMINISTRATIVE:**

28.    Palmer Administrative is a vehicle auto protection plan administrator.

29.    Palmer Administrative operates using the names N.C.W.C., MB
Administrations Holdings, LLC and Platinum Auto Protection.[12]

---

[9] https://www.bbb.org/us/oh/dublin/profile/auto-warranty-processing/national-
administrative-service-co-llc-0302-11005532/customer-reviews
[10] Id.
[11] Id.
[12] https://www.bbb.org/us/nj/ocean/profile/extended-warranty-contract-service-
companies/palmer-administrative-services-0221-90163943

30.    Consumers have posted complaints online directly to Palmer Administrative through its Google and BBB pages alleging unsolicited telemarketing, including:

- "This place is a Car Warranty scammer. They like to call me, and I pick up to give them fake car info to waste their time. kind of fun to waste scammers' time. Oh yeah, the five-star reviews below are all fake."[13]

- "ROBOCALLER SPAMS CELLPHONES. Filed complaint as I'm on the do not call list and keep getting robocalls about my auto warranty. I scammed them into giving me their website to look at "exclusions to their warranty" and finally found out who they are! READ REVIEWS - I DON'T THINK YOU WANT A WARRANTY FROM THEM ANYWAY. If you use unsolicited robo calls to my DO NOT CALL CELL PHONE, I consider you a scammer."[14]

- "They call 1k times wasting my time so i repay the favor..and keep them on the phone for 20 min.. No matter how many times you go to the do not call list they still call you They act like they know your warranty is about to expire yet ask you what type of vehicle you have it's a scam."[15]

- "Company likes to scam call from diff numbers…"[16]

- "I have constantly received phone calls from this company and I block their number everytime they call. I have been asked to be put on the do not call list MULTIPLE times. They are harassing me about a vehicle I dont even own anymore. Please make them stop. They call at all hours of the day"[17]

---

[13] https://www.google.com/search?q=palmer+admin
[14] Id.
[15] Id.
[16] Id.
[17] https://www.bbb.org/us/nj/ocean/profile/extended-warranty-contract-service-companies/palmer-administrative-services-0221-90163943/complaints

## 2. THE ENTERPRISE: HOW THE DEFENDANTS OPERATE TOGETHER

**FLEX HOME & AUTO:**

31.    Flex Home & Auto placed the calls and sold the plans that Plaintiff Rowan purchased.

32.    The service plans that Plaintiff Rowan received both state the name of a salesperson who is associated with Flex Home & Auto.

33.    The September 23 plan shows that the name of the salesperson is Roryd Williams. Williams posts job opportunities online using the name Flex Home & Auto:

| BUYER | | SELLER | Dealer #: |
|---|---|---|---|
| **Name:** NATHAN ROWAN | | **Name:** Auto Service Department | |
| **Address:** ▓▓▓▓ | | **Address:** PO Box 15727 | |
| **City, State, Zip:** Baltimore, MD 21224 | | **City, State, Zip:** Santa Ana, CA 92735 | |
| **Phone:** ▓▓5605 | | **Phone:** 1-800-599-9557 | |
| **Email:** nathan.j.rowan▓▓▓ | | **Salesperson:** Roryd Williams | |

| Administrator | National Administrative Service Co., LLC |
|---|---|
| Contract Effective as of: | 9/23/2025 |



34.    When Plaintiff Rowan purchased a plan on September 23, 2025, the transaction details show the name Flex Home Auto and provide a phone number 714-381-7334.

35.    714-381-7334 belongs to Steven Daskowski:

Who owns the phone number

# (714) 381-7334

✅ LOW SPAM RISK

📱 Cell Phone    🔄 Last updated May 2025

Phone number registered to

## Steven Eric Daskowski

[19]

36.    Daskowski is the owner of Flex Home & Auto.[20]

37.    Daskowski is also listed as the salesperson on the October 8, 2025 plan:

---

[18] https://www.facebook.com/groups/377146233608169/user/516824761/
[19] https://www.whitepages.com/phone/1-714-381-7334
[20] https://www.bbb.org/us/ca/lake-elsinore/profile/warranty-plans/flex-home-auto-1126-850113202

| BUYER | SELLER | Dealer #: |
|---|---|---|
| **Name:**<br>NATHAN J ROWAN | **Name:**<br>Auto Service Department | |
| **Address:**<br> | **Address:**<br>PO Box 15727 | |
| **City, State, Zip:**<br>Baltimore, MD 21224 | **City, State, Zip:**<br>Santa Ana, CA 92735 | |
| **Phone:**<br>-5605 | **Phone:**<br>1-800-599-9557 | |
| **Email:**<br>NATHAN.J.ROWAN | **Salesperson:**<br>Steve Daskowski | |

| Administrator | National Administrative Service Co., LLC |
|---|---|
| Contract Effective as of: | 10/8/2025 |

**PELICAN:**

38.     Pelican is listed as the seller on both of the plans that Plaintiff Rowan received:

## Executive Service Agreement

| Seller |
|---|
| Pelican Investment Holdings, LLC d/b/a Auto Service Department |
| PO Box 15727<br>Santa Ana, CA 92735 |

39.     Plaintiff Rowan received emails from the domain autoservicedept.com, which forwards to asdservicedept.com.[21]

40.     The website for asdservicedept.com shows the name Auto Service Department, a d/b/a of Pelican as shown above.

---

[21] https://wheregoes.com/trace/20256056990/

**NATIONAL ADMINISTRATIVE:**

41.    National Administrative is the administrator of both of the plans Plaintiff Rowan purchased:

| Administrator | |
|---|---|
| National Administrative Service Co., LLC | Claims: 1-888-319-9239 |
| 5500 Frantz Road, Suite 100 | Customer Service: 1-888-837-1646 |
| Dublin, OH 43017 | |

42.    National Administrative profited financially from the sales generated by the other Defendants.

## 3. PALMER ADMINISTRATIVE'S CONTROL OF THE OPERATION

43.    Palmer Administrative and Flex Home & Auto are believed to be one-and-the-same.

44.    The website for Flex Home & Auto states that its customer service number is 800-599-9557:



45.    800-599-9557 is the main number for Palmer Administrative:



46.    In addition to the above, the asdservicedept.com website also shows the phone number 800-599-9557:

---

22 https://www.flexhomeandauto.com/
23 Id.
24 https://www.palmeradmin.com/

47.     The mailing address that is listed on the asdservicedept.com website matches the Palmer Administrative address. In fact, both sites share a nearly identical footer:





48.     Roryd Williams, a salesperson listed on a plan that Plaintiff purchased, as shown above, and Grant Singleton, an employee that Plaintiff Rowan spoke to during a sales call that led to the purchase of a plan by Plaintiff are both associated with Bloo-Print Marketing Group, a d/b/a that is believed to be owned/controlled by

[25] https://www.asdservicedept.com/
[26] https://www.palmeradmin.com/
[27] https://www.asdservicedept.com/

Flex Home & Auto based on job postings and the following investigation conducted by Plaintiff's attorneys.

49.    Bloo-Print Marketing Group provides outsourcing solutions that include telemarketing for extended auto warranties.[28]

50.    Bloo-Print Marketing Group posted a link online for hiring a Project Manager:

[29]

51.    The link in the posting leads to a group on Microsoft Teams. The group was set-up for applicants to be trained for a junior closer position for an auto warranty campaign:

---

[28] https://www.facebook.com/profile.php?id=61578111676900
[29] https://www.facebook.com/groups/492105549565839/posts/1050813387028383/



52.     Williams is active in the group and provides training to the new applicants:



53.     Singleton is the Global Operations Director, according to Williams:



---

30 https://shorturl.at/WcBCS
31 Id.
32 Id.

54.     Williams posted about the customer relationship management ("CRM") system that is used for the warranty program, with a tutorial that includes the name "Flex Crm":



55.     The URL for the CRM is https://mbhsales.ncwcinc.com/login.

56.     The domain ncwcinc.com is owned/operated by Palmer Administrative:

_____

[33] Id.



57.     As was shown above, NCWC is a registered name used by Palmer Administrative on ncwcinc.com.[35]

58.     When a Flex Home & Auto employee contacts a consumer and enters the information into a CRM, they are entering the information into the Palmer Administrative CRM:

---

[34] https://support.ncwcinc.com/
[35] https://www.palmeradmin.com/privacy-policy/



[36]

59.    Both of the plans that Plaintiff Rowan purchased are in the Palmer

Administrative CRM:

---

[36] https://mbhsales.ncwcinc.com/vsc

| Name | Address | Contract # | Quote # | Insured | Phone | Action |
|------|---------|-----------|---------|---------|-------|--------|
| Nathan Rowan | | AUTOEEL161377 | MBH250MGFV | KL77LFE23RC093480 | 5605 | Edit |
| NATHAN J ROWAN | | AUTOEEL166423 | MBH2GESLN8 | KL77LFE23RC093480 | 5605 | Edit |

[37]

60.    As a result of what is shown above, Flex Auto & Home is directly associated with Palmer Administrative, whether through a shared ownership or through a partnership.

61.    Palmer Administrative is directly liable for the TCPA violations under three independent legal theories: (1) as the actual telemarketer through its alter ego Flex Home & Auto, (2) as a seller whose services were being marketed, and (3)

_____

[37] https://mbhsales.ncwcinc.com/advance-search

through ratification by accepting financial benefits while maintaining operational control.

62. **Alter Ego/Single Enterprise Theory**: Palmer Administrative and Flex Home & Auto operate as a single enterprise with shared ownership (Samararatne), shared infrastructure (CRM system at mbhsales.ncwcinc.com), shared employees (Williams, Singleton), shared phone numbers (800-599-9557), and shared business addresses. The entities lack independent economic substance and should be treated as one for liability purposes.

63. **Seller Liability Under FCC Rules**: Palmer Administrative is the actual provider of the vehicle service contract administration services marketed through the unlawful calls. The FCC has made clear that sellers cannot avoid liability by outsourcing telemarketing to third parties, particularly when the seller maintains operational control through its own CRM system and accepts revenue from the resulting sales.

64. **Ratification Through Control and Financial Benefit**: Palmer Administrative had real-time visibility into all calling activity through its CRM system (mbhsales.ncwcinc.com), which tracked every call, recorded all consumer information, and processed all sales. Palmer's continued acceptance of revenue from sales generated by DNC violations over more than five years, combined with its operational control through the CRM infrastructure, constitutes ratification.

65.     It is also shown that Flex Auto & Home operates using the d/b/a Bloo-Print Marketing Group.

66.     Roryd Williams regularly posts cold-calling job opportunities for Bloo-Print Marketing Group:



38

67.     Williams also posts job opportunities for Flex Home & Auto for auto warranty closers:

39

---

68.     Flex Home & Auto is placing cold calls to consumers like Plaintiff Rowan through Bloo-Print Marketing Group.

69.     When the consumer shows interest in purchasing a plan, as Plaintiff Rowan did, they are transferred to a Flex Home & Auto employee who will close the sale.

### 4. COMMON OWNERSHIP AND CONTROL

70.     The connection between Palmer Administrative and the other Defendants goes beyond a connection with Flex Home & Auto.

71.     Vajira Samararatne is the owner/president of Palmer Administrative.[40]

72.     Samararatne is also an officer or member of Pelican.[41]

73.     Both Pelican and Flex Home & Auto operate using the d/b/a Auto Service Department.

74.     Upon information and belief, Palmer Administrative and National Administrative are one-and-the-same.

75.     As per Plaintiff's experience, the extended auto warranty details are entered into the Palmer Administrative CRM, but the administrator is listed as National Administrative in the service plan.

---

[40] https://esos.nv.gov/EntitySearch/BusinessInformation - Palmer Administrative
[41] https://www.tribtoday.com/news/local-news/2023/01/yost-slams-door-on-car-warranty-robocallers/

76.     The CEO of National Administrative is Haytham ElZayn.[42]

77.     ElZayn was associated with Palmer Administrative as President and through other roles according to corporate registries such as the state of Rhode Island Office of the Secretary of State foreign corporation records for Palmer Administration which list ElZayn as the corporation President.[43]

## 5. KNOWLEDGE AND RATIFICATION OF THE DEFENDANTS

78.     All of the named Defendants have acted with knowledge and ratified the use of unlawful telemarketing practices to generate business on behalf of each other.

79.     Pelican, National Administrative and Palmer Administrative have all been involved in numerous TCPA-related lawsuits since at least 2020.

80.     For example, Ohio Attorney General Dave Yost brought a lawsuit against companies including National Administrative, Pelican and MB Holdings, a d/b/a of Palmer Administrative alleging unsolicited telemarketing calls, as well as Ohio's Consumer Sales Practices Act.[44]

---

[42] https://www.pro-techsdealerservices.com/service-provider-partners/allegiance-administrators/

[43] https://business.sos.ri.gov/CORP_DRIVE1/2021/1119/000000000/1798/backup/202105214850_1.pdf

[44] https://www.tribtoday.com/news/local-news/2023/01/yost-slams-door-on-car-warranty-robocallers/

81.    The Defendants function together in a joint collaboration scheme here to generate business through unlawful telemarketing practices.

82.    The calls are made directly by Flex Home & Auto, a company that has been shown to be directly connected to Palmer Administrative, whether through ownership, control or partnership.

83.    Flex Home & Auto also share a common d/b/a with Pelican – Auto Service Department.

84.    The Palmer Administrative CRM is used by Flex Home & Auto/Pelican.

85.    The plan administrator is National Administrative, who is believed to be related to Palmer Administrative.

86.    The service plans that Plaintiff Rowan received directly link Pelican and National Administrative to the unsolicited telemarketing calls that Plaintiff received.

87.    The Defendants have generated a scheme to engage in unlawful telemarketing with an attempt to hide their liability.

88.    Upon discovery it will be determined if Pelican shares ownership, or owns Flex Home & Auto.

89.    All 4 of the Defendants profit from the unlawful telemarketing calls that they either engage in, or ratify to generate business.

90.     Upon information and belief, National Administrative and Palmer Administrative control the training and marketing of extended auto warranty plans by companies like Flex Home & Auto and Pelican, as these companies are selling the plans directly to consumers.

91.     Palmer Administrative ratified the DNC violations by accepting the financial benefits of the unlawful calls with full knowledge that consumers on the DNC registry were being called. Palmer's CRM system provided Palmer with real-time visibility into all calling activity, including the phone numbers being called. Palmer's acceptance of revenue from sales generated by calls to DNC-registered numbers, over a period of more than five years, constitutes ratification of the TCPA violations and renders Palmer liable.

92.     Based on the number of TCPA-related lawsuits that have been filed against Pelican, National Administrative and Palmer Administrative, the Defendants are fully aware that plans are being solicited through unlawful telemarketing practices, including calls to phone numbers that are registered on the DNC.

93.     The fact that the calls have continued for over 5 years shows ratification and knowledge by all the Defendants.

94.     The Federal Communication Commission has instructed that corporations such as National Administrative and Palmer Administrative may not avoid liability by having their telemarketing outsourced:

[A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as if often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC notes, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd. 6574, at ¶ 37 (201) ("FCC 2013 Ruling") (citations omitted).

95.    Palmer Administrative exercises operational control over the telemarketing campaign through its ownership and operation of the CRM system located at mbhsales.ncwcinc.com. This CRM system is the central infrastructure through which consumer information is recorded, and all sales are processed. Palmer's provision and maintenance of this CRM system constitutes direct participation in and control over the unlawful telemarketing campaign, and Palmer cannot escape liability by delegating the actual dialing to Flex Home & Auto.

96.    Palmer Administrative is the actual provider of the vehicle service contract administration services that were marketed to Plaintiff Rowan through the

unlawful telemarketing calls. Palmer cannot escape TCPA liability by having Flex Home & Auto place the calls or by listing a related entity (Pelican/ National Administrative) on the service agreements. Palmer's financial benefit from each sale, combined with its provision of the services being marketed, renders Palmer directly liable as a "seller" under the TCPA.

97.    As the FCC explained in its 2013 DISH Network ruling:[45] "[A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions." 28 FCC Rcd. at ¶ 37. Palmer Administrative's attempt to structure its business through related entities and outsourced calling operations cannot insulate it from TCPA liability for calls marketing its own services.

**WILLFULNESS OF UNLAWFUL TELEMARKETING CONDUCT**

98.    It will be shown that all of the named parties have acted willfully regarding the unlawful telemarketing conduct that has led to the filing of this case.

99.    As referenced above, Ohio Attorney General Dave Yost brought a case[46] against the following entities alleging violations of the Ohio Telephone Solicitation Sales Act ("TSSA") to Ohio residents that include:

---

[45] https://docs.fcc.gov/public/attachments/FCC-13-54A1.pdf
[46] Case No. 23CV000470

- Pelican Investment Holdings – named in this Complaint;

- Dimension Service Corp – merged with National Administrative;[47]

- National Administrative Service – named in this Complaint;

- MB Administrations Holdings LLC – a d/b/a of Palmer Administrative;

- Vajira Samararatne – Owner of Palmer and member of Pelican; and

- Haytham H. Elzayn – Owner of National Administrative/Dimension Service Corp.

100.  As was noted by the Ohio Attorney General's website – ohioattorneygeneral.gov, Yost said, "Interestingly, after our initial subpoena, they stopped calling people who have Ohio area codes but continued to call Ohioans with area codes from other states."[48] This shows that the Defendants acted willfully and exerted control over the telemarketing campaign because calls to Ohio numbers were stopped, but the campaign itself was continued, despite allegations that that calls were unsolicited.

101.  In the consent judgement including Samararatne, Samararatne was found in the Findings of Fact to have played a role in the business activities and sales

---

[47] https://www.fi-magazine.com/319875/dimension-nasc-announce-merger
[48] https://www.ohioattorneygeneral.gov/Media/News-Releases/January-2023/AG-Yost-Slams-the-Door-Shut-on-Car-Warranty?utm

conduct of Pelican. Samararatne, Pelican and MB Holdings, a d/b/a of Pelican were ordered to pay a civil penalty of $50,000.[49]

102.   In the consent judgement including Pelican, National Administrative, and Elzayn, the Defendants were ordered to pay a civil penalty of $50,000.[50]

103.   The Defendants were all held liable for violations of the TSSA in the aforementioned case.

104.   Despite this case, the Defendants that were listed above have continued to place unsolicited calls to consumers that are in violation of the TCPA, as per Plaintiff Rowan's experience.

105.   For example, many TCPA-related lawsuits have been filed against the Defendants including:

- Forteza v. Auto Service Department et al – 4:2023cv00401 which alleges that unsolicited autodialed calls were placed to consumers by Defendants including Pelican and Palmer Administrative.
- Clough v. National Administrative et al – 2:2025cv00271 which alleges violations of the DNC by Defendants Pelican and National Administrative.
- Showers v. Pelican Investment Holdings Group, LLC et al – 3:2023cv02864 which alleges violations of the DNC and violations of the Illinois Telephone Solicitations Act by Defendants including Pelican and Dimension Service Corporation (shared ownership with National Administrative).

---

[49] https://fcdcfcjs.co.franklin.oh.us/CaseInformationOnline/caseSearch?qiuabipJwCCbCAL1TFJB

[50] Id.

- Badolato et al v. Palmer Administrative Services, Inc. – 5:2024cv00277 which alleges violations of the DNC by Palmer Administrative and its agents.

106.    Neither Plaintiff nor the members of the proposed Class ever provided Defendants and/or their agents with prior express written consent to receive the telephone calls at issue.   Defendants do not have any record of express written consent to place telemarketing calls to Plaintiff or to members of the proposed Class.

107.    In response to these calls, Plaintiff Rowan brings this case seeking injunctive relief requiring the Defendant to cease from violating the TCPA, and an award of statutory damages to the members of the Class and costs.

## PLAINTIFF ROWAN'S ALLEGATIONS

108.    Plaintiff Rowan is the sole owner and user of his cell phone number ending in 5605.

109.    Plaintiff Rowan registered, or had registered on his behalf, his cell phone number on the DNC on June 4, 2005.

110.    Plaintiff Rowan has owned his cell phone number for over 20 years.

111.    Plaintiff Rowan uses his cell phone number for personal use only as one would use a landline telephone number in a home, including to communicate with family and friends.

112.   The calls that Plaintiff Rowan received from the Defendants were received more than 31 days after the Plaintiff registered his cell phone number on the DNC.

113.   Plaintiff Rowan received the following unsolicited calls to his cell phone. None of these calls were answered:

- September 17, 2025 at 12:11 PM from 415-490-2063;

- September 17, 2025 at  6:37 PM from 415-490-2063;

- September 18, 2025 at 10:27 AM from 415-300-1040;

- September 19, 2025 at 2:21 PM from 415-329-3081;

- September 22, 2025 at 12:58 PM from 415-413-1402;

114.   Plaintiff Rowan called 415-413-1402, 415-490-2063 and 415-300-1040 back on September 23, 2025. Each call was answered by "Vehicle Processing Center."

115.   Vehicle Processing Center is the name used by Flex Home & Auto and/or its agents to solicit consumers. The fact that all callback numbers answered with the same "Vehicle Processing Center" greeting demonstrates a coordinated telemarketing operation controlled by Flex Home & Auto on behalf of all Defendants.

116.   On September 23, 2025 at 2:19 PM, Plaintiff Rowan received an unsolicited call to his cell phone from 415-418-2387.

117.   When Plaintiff Rowan answered this call, an employee said that her name is Amy and that she was calling from the Vehicle Processing Center.

118.   Plaintiff Rowan decided that he would play along to confirm which companies were behind the unsolicited calls he had received.

119.   Amy asked some qualifying questions and she referenced Plaintiff Rowan's zip code before transferring him to Eduardo, a Chevy senior coverage specialist.

120.   Eduardo asked more questions about Plaintiff's vehicles and he solicited the sale of an extended vehicle warranty.

121.   Eduardo then transferred Plaintiff Rowan to a finance manager named Roryd Williams to complete the sale.

122.   When the call came to an end, Plaintiff Rowan received the following email that was sent from noreply@autoservicedept.com:

From: **Warranty Protection Service** <noreply@autoservicedept.com>
Date: Tue, Sep 23, 2025 at 3:00 PM
Subject: Thank you for your order!
To: Nathan Rowan <█████ ██████ ████>

# Welcome Nathan Rowan,

We're thrilled to welcome you to the Auto Service family! Your vehicle is now under our protective wing, and we're here to ensure that you have a smooth and worry-free driving experience.

123.   Plaintiff Rowan also received a payment transaction notice from his bank showing:



124.   As was stated before, 714-381-7334 is registered to Steve Daskowski:

Who owns the phone number

# (714) 381-7334

🛡 LOW SPAM RISK

📱 Cell Phone    📅 Last updated May 2025

Phone number registered to

**Steven Eric Daskowski**

[51]

---

[51] https://www.whitepages.com/phone/1-714-381-7334

125.    Plaintiff Rowan received a policy in the mail indicating that the salesperson is Roryd Williams, who has already been established as a Flex Home & Auto employee, and indicating that National Administrative is the plan administrator:

| BUYER | SELLER | Dealer #: |
|---|---|---|
| **Name:**<br>NATHAN ROWAN | **Name:**<br>Auto Service Department | |
| **Address:**<br>1211 S CONKLING ST. APT 344 | **Address:**<br>PO Box 15727 | |
| **City, State, Zip:**<br>Baltimore, MD 21224 | **City, State, Zip:**<br>Santa Ana, CA 92735 | |
| **Phone:**<br>651-983-5605 | **Phone:**<br>1-800-599-9557 | |
| **Email:**<br>nathan.j.rowan@gmail.com | **Salesperson:**<br>Roryd Williams | |

| **Administrator** | National Administrative Service Co., LLC |
|---|---|
| **Contract Effective as of:** | 9/23/2025 |

126.    On September 25, 2025 at 10:04 AM, Plaintiff Rowan received another unsolicited call to his cell phone, again from 415-300-1040.

127.    When Plaintiff Rowan answered this call, an employee said that her name is Ashley with Vehicle Processing Center.

128.    Ashley then transferred Plaintiff Rowan to an employee named Maria who said that she is a senior coverage specialist.

129.    Ashley and Maria both solicited the sale of an extended warranty plan.

130.    Plaintiff Rowan told Maria that he purchased a plan, which surprised Maria.

131.    Plaintiff Rowan provided his VIN and exact mileage, which were missing in the September 23, 2025 call and then this call came to an end.

132.    On October 8, 2025 at 10:43 AM, Plaintiff Rowan received an unsolicited call to his cell phone from 415-329-3097.

133.    When Plaintiff answered this call, Ashley said that she was calling from the Vehicle Processing Center.

134.    After soliciting an extended warranty plan, Ashley transferred Plaintiff Rowan to a senior coverage specialist who identified himself as Grant Singleton.

135.    When asked, Grant said that he was with Flex Home & Auto Warranty.

136.    Grant provided phone number 888-837-1646, which is listed on the asdservicedept.com website:



137.    Plaintiff Rowan purchased a plan to confirm which companies were behind the unsolicited calls.

---

[52] https://www.asdservicedept.com/

138.    When Plaintiff Rowan received the plan in the mail, it revealed that the salesperson was Steve Daskowski and that the plan administrator is National Administrative:

| BUYER | SELLER | Dealer #: |
|---|---|---|
| Name:<br>NATHAN J ROWAN | Name:<br>Auto Service Department | |
| Address: | Address:<br>PO Box 15727 | |
| City, State, Zip:<br>Baltimore, MD 21224 | City, State, Zip:<br>Santa Ana, CA 92735 | |
| Phone:<br>-5605 | Phone:<br>1-800-599-9557 | |
| Email:<br>NATHAN.J.ROWAN | Salesperson:<br>Steve Daskowski | |

| Administrator | National Administrative Service Co., LLC |
|---|---|
| Contract Effective as of: | 10/8/2025 |

139.    On October 14, 2025 at 11:33 AM, Plaintiff Rowan received another unsolicited call to his cell phone, again from 415-418-2387.

140.    This call was not answered, but Plaintiff knows that the number belongs to Flex Home & Auto because the September 23, 2025 call was also from 415-418-2387.

141.    Plaintiff Rowan cancelled the plans and received refunds from the Defendants.

142.    Plaintiff Rowan has not been looking to acquire a vehicle warranty.

143.    Plaintiff Rowan has never provided consent to any of the Defendants to receive solicitation calls.

144.    The unauthorized telephone calls that Plaintiff received from or on behalf of Defendant has harmed Plaintiff Rowan in the form of annoyance, nuisance, and invasion of privacy, occupied his phone memory, and disturbed the use and enjoyment of his phone.

145.    The calls also used up a lot of Plaintiff's time, as he had to purchase plans from the Defendants to confirm who was behind the calls.

146.    Seeking redress for these injuries, Plaintiff Rowan, on behalf of himself and a Class of similarly situated individuals, brings suit under the TCPA.

## CLASS ALLEGATIONS

147.    Plaintiff Rowan brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Class:

> **<u>Do Not Call Registry Class:</u>** All persons in the United States who from four years prior to the filing of this action through class certification (1) the Defendants called more than one time, (2) within any 12-month period, (3) where the person's residential telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason the Defendants called Plaintiff.

148.    The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, their subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons

who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendants have been fully and finally adjudicated and/or released. Plaintiff Rowan anticipates the need to amend the Class definitions following appropriate discovery.

149.    **Numerosity and Typicality**: On information and belief, there are hundreds, if not thousands of members of the Class such that joinder of all members is impracticable, and Plaintiff is a member of the Class.

150.    **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

(a)    whether Defendants placed multiple calls within a 12-month period to Plaintiff and other consumers whose telephone numbers were registered with the DNC for at least 30 days of the time of each call;

(b)    whether the calls constitute a violation of the TCPA;

(c)    whether members of the Class are entitled to treble damages based on the willfulness of Defendants' conduct.

151. **Adequate Representation**: Plaintiff Rowan will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in class actions. Plaintiff Rowan has no interests antagonistic to those of the Class, and the Defendants have no defenses unique to Plaintiff. Plaintiff Rowan and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and have the financial resources to do so. Neither Plaintiff Rowan nor his counsel have any interest adverse to the Class.

152. **Appropriateness**: this class action is also appropriate for certification because the Defendants have acted or refused to act on grounds generally applicable to the Class and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final class-wide injunctive relief appropriate. Defendants' business practices apply to and affect the members of the Class uniformly, and Plaintiff's challenge of those practices hinges on Defendants' conduct with respect to the Class as wholes, not on facts or law applicable only to Plaintiff Rowan. Additionally, the damages suffered by individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the members of the Class to obtain effective relief from Defendants' misconduct on an

individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

### FIRST CLAIM FOR RELIEF
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Rowan and the Do Not Call Registry Class)**

153.  Plaintiff repeats and realleges paragraphs 1-152 of this Complaint and incorporates them by reference herein.

154.  The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or his telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

155.  Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.  47 U.S.C. § 227(c).

156.  The Defendants violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as

Plaintiff Rowan and the Do Not Call Registry Class members who registered their

respective telephone numbers on the National Do Not Call Registry, a listing of

persons who do not wish to receive telephone solicitations that is maintained by the

federal government.

157.    The Defendants violated 47 U.S.C. § 227(c)(5) because Plaintiff Rowan

and the Do Not Call Registry Class received more than one call in a 12-month period

made by or on behalf of the Defendants in violation of 47 C.F.R. § 64.1200, as

described above.

158.    As a result of Defendants' conduct as alleged herein, Plaintiff Rowan

and the Do Not Call Registry Class suffered actual damages and, under section 47

U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such

violations of 47 C.F.R. § 64.1200.

159.    To the extent Defendants' misconduct is determined to be willful and

knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of

statutory damages recoverable by the members of the Do Not Call Registry Class.

## PRAYER FOR RELIEF

a)    An order certifying this case as a class action on behalf of the

Class as defined above; appointing Plaintiff as the representative

of the Class; and appointing his attorneys as Class Counsel;

b)    An award of actual and/or statutory damages and costs;

c)   An order declaring that Defendants' actions, as set out above, violate the TCPA;

d)   An injunction requiring Defendants to cease all calling activity that is done without proper consent, and to otherwise protect the interests of the Class; and

e)   Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Rowan requests a jury trial.

**NATHAN ROWAN**, individually and on behalf of all others similarly situated,

DATED this 16th day of December, 2025.

By: /s/ *Rachel E. Kaufman*
Rachel E. Kaufman
KAUFMAN P.A.
237 S Dixie Hwy, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881
Email: rachel@kaufmanpa.com

*Attorney for Plaintiff and the putative Class*